McKeon, PJ.
(dissenting). Alluding to the terms of a mortgage and guarantee entered into among the parties, the motion court awarded summary judgment to plaintiff bank for a mistaken payment of real estate taxes made for the benefit of defendant High Tech and denied defendants’ cross motion seeking, inter alla, to amend their answer to assert various counterclaims. Since it is undisputed that, at the time of the mistaken real estate tax payment, the mortgage and guarantee had already been assigned to another bank, it was, in my view, error for the court below to rely solely on the provisions of those instruments as the legal justification for its decision.
Indeed, a fair reading of the majority opinion suggests that my colleagues see the problem (and likely share my concern). In affirming the grant of summary judgment to plaintiff, nary a reference is made to the mortgage documents, rather plaintiffs claim is characterized as one for unjust enrichment (a term never used by the court below in its decision), an equitable remedy of last resort rooted in concepts of fundamental fairness and justice (see Flag Wharf, Inc. v Merrill Lynch Capital Corp., 40 AD3d 506 [2007]). Facially, the provisions of the mortgage afforded plaintiff various options at law to deal with its mistake; yet by embracing equity as the sole legal solution to plaintiffs dilemma, the majority implicitly acknowledges that, subsequent to the assignment, the parties were no longer in privity and the mortgage could no longer serve as a remedial source to provide plaintiff with a means to rectify its blunder. Hence, deprived of an available remedy at law, plaintiffs only recourse lay in equity.
I agree, parenthetically, that High Tech has been unjustly enriched by the erroneous tax payment. Even High Tech and its guarantors, I suspect, would agree with that. My disagreement stems from the majority’s unwillingness, at the least, to permit defendants to amend their answer, the reasons for its refusal and its belief that the guarantee executed by Lieberman and Compositron provides a legal basis for a grant of summary judgment against those defendants.
In support of its legal posture, the majority first relies on the “no counterclaim clause” contained in the mortgage. However, defendants’ counterclaims, at least to the extent that a set off to plaintiff’s claim is stated, are equitable in nature (see Cammarota v Drake, 285 AD2d 919, 920 [2001]) and are grounded in the same principles of justice and fundamental fairness which allow plaintiff to assert an unjust enrichment claim, notwithstanding an earlier unilateral assignment of the mortgage, the *5 terms of which plaintiff now seeks to embrace in an effort to render defendants legally defenseless. It is a basic tenet of our jurisprudence that “[h]e who seeks equity must do equity” (Holdeen v Rinaldo, 28 AD2d 947, 949 [1967]). Having assigned the mortgage, prior to its mistake, plaintiff cannot now rely, if equity is to be achieved, on the mortgage’s “no counterclaim” provisions while, at the same time, holding dear to the equitable benefits of an unjust enrichment remedy.
The majority also claims that the counterclaims lack legal sufficiency and particularity. Defendants do allege, inter alla, in their first counterclaim, that an escrow account was established from which to pay real estate taxes. Defendants further assert that plaintiff wrongly withdrew funds from the escrow account in an amount far in excess of that necessary to pay the real estate taxes at issue. If established, such conduct may well constitute a breach of plaintiffs fiduciary duties to defendants; at a minimum, it serves as the basis for a setoff to plaintiffs unjust enrichment claim.
In my view, defendants’ counterclaims are sufficient, as a pleading, to apprise plaintiff of the nature of their claims or defenses, a bill of particulars and disclosure being the devices which will, presumably, provide the specificity which the majority claims to be lacking. There is nothing here, at this early stage in the litigation, which justifies abandoning the long-settled rule that “[l]eave to amend pleadings shall be freely given absent prejudice or surprise” (Murray v City of New York, 51 AD3d 502, 503 [2008] [internal quotation marks omitted]).
Finally, the majority characterizes the guarantee executed by Lieberman and Compositron as “unlimited and continuing.” They are half right. While, as the majority correctly points out, the guarantors remain answerable for High Tech’s obligations under the mortgage notwithstanding “[a] change in the parties’ relationship,” including a cessation of their status as mortgagor/ mortgagee, this future responsibility, by the express and unequivocal terms of the guarantee, relates to High Tech’s debt to the bank, not a bookkeeping mistake made by plaintiffs accounting department. Lieberman and Compositron agreed to guarantee “loans made” or credit “to be extended,” not to act as an insurer for those mistakes made by plaintiff, which purportedly unjustly enriched High Tech.
A guarantee, while a contract independent of the underlying obligation it is meant to secure, must still be construed “in the strictest manner” (White Rose Food v Saleh, 99 NY2d 589, 591 *6 [2003]). Clearly, in this case, the purpose of the guarantee was to provide plaintiff with an alternative source to satisfy any financial delinquency by High Tech arising out of its mortgage obligations. Indeed, under the guarantee executed by Lieberman and Compositron, the bank could look directly to the guarantors for payment without the necessity of reducing High Tech’s default to a judgment. It is hard to imagine, however, how the guarantee can be construed to apply to an error by an entity whose actions the guarantors never pledged to secure. Therefore, I believe that the award of summary judgment against Lieberman and Compositron was error.
I thus dissent, and would deny plaintiffs motion for summary judgment and grant defendants’ cross motion, insofar as it sought to amend their answer.
Davis and Heitler, JJ., concur; McKeon, EJ., dissents in a separate memorandum.